Donnie W. MITCHELL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9912–CR–852.

Court of Appeals of Indiana.

June 8, 2000.

Transfer Denied Aug. 17, 2000.

John Pinnow, Greenwood, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

1. *See* IND CODE § 35–42–4–1.

2. *See* IND.CODE § 35–42–4–2.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Donnie W. Mitchell ("Mitchell") appeals his convictions and sentences for rape[1] and criminal deviate conduct,[2] both Class B felonies.

We affirm.

### Issues

Mitchell presents two issues for our review:

 I. whether the trial court erred in excluding evidence that the victim was a party to a child in need of services ("CHINS") proceeding; and

 II. whether the trial court erred in ordering Mitchell to pay restitution for the victim's counseling expenses as a condition of his probation.

### Facts and Procedural History

Mitchell and the victim, A.G., began a relationship in 1992 and started living together in 1996. In September 1998, the State initiated a CHINS proceeding against A.G. regarding her two children,[3] who were removed from the home she shared with Mitchell and placed in the custody of a foster parent, Virgie Brame ("Brame"). In February 1999, A.G. moved out of the home and into a shelter. She took Mitchell's van and left without telling him or packing any of her clothing because, as she later testified, Mitchell had prevented her from leaving in the past and she was terrified of him. The day after A.G. left, Mitchell went to where she was eating lunch and attempted to talk with her; she refused to talk to him.

On March 5, 1999, Mitchell drove to A.G.'s place of employment to talk with her. When A.G. again refused to talk to him, he followed her to a gas station across

3. Mitchell is not the children's father.

the street. There, he opened the driver's side door of the van she was operating and told her to slide over. When she did not comply, he shoved her into the passenger seat and proceeded to drive to the house they had shared. A.G. told Mitchell she did not want to go with him and tried to exit the van at a stoplight, but he grabbed the door and closed it. She tried to run away when they arrived at the house, but he grabbed her and pulled her inside. Mitchell repeatedly stated, "You're going to talk to me," and ultimately snatched A.G.'s coat, ripping it off and tearing two buttons. He then removed the rest of her clothes, pushed her onto the bed, took off his clothes, performed oral sex on her, and had sexual intercourse with her. He told her to "move [her] body," but she refused to participate in the sexual intercourse. Crying and frightened, A.G. called Brame the following morning. Brame asked her what was wrong, to which A.G. responded, "Please help me." Brame called the police, who subsequently apprehended Mitchell as he was driving his van with A.G. in the passenger seat. A.G. broke down in tears as she exited the van, and Mitchell was arrested.

The State charged Mitchell with rape, sexual deviate conduct, and confinement. On the morning of trial, Mitchell filed a notice pursuant to Evidence Rule 404(b) that he intended to offer evidence that A.G. was a party to a CHINS action involving her children. The trial court ruled that the evidence of the CHINS action was inadmissible. Thereafter, the jury found Mitchell guilty of rape and sexual deviate conduct. At sentencing, the trial court ordered him to pay restitution for A.G.'s counseling expenses as a condition of his probation.

## Discussion and Decision

### I. Evidence of CHINS Proceeding

Mitchell contends that the trial court erred in excluding evidence that A.G. was a party to a CHINS proceeding. In particular, he urges that "[t]he evidence was admissible under Evidence Rule 404(b) to show [she] had motive to falsely accuse [him] of sexual assault." At trial, defense counsel made the following offer to prove regarding A.G.'s alleged motive:

> Judge, the defense in this case for Mr. Mitchell maintain[s] that [A.G.'s] children were taken from her, which caused her great mental strife. The defense would have been that because of this mental strife and the problems with getting the kids back, she tried to distance herself from Mr. Mitchell and wanted to display to the people, the CHINS people as well as ... to defend her own criminal charges, that in fact Mr. Mitchell was the bad person in this case. And because she wanted to get the kids back so desperately, that provided her a motive to make up a story that she was raped when in fact it was consensual, and that we would be offering that evidence of the CHINS action to show her motive to lie.... We would be offering that under Indiana Rules of Evidence 404(b) as ... evidence of motive.

We cannot endorse Mitchell's broad application of Evidence Rule 404(b).

The rule provides in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Ind. Evidence Rule 404(b). Our supreme court has observed that Evidence Rule 404(b) was "designed to prevent the jury from assessing a *defendant's* present guilt on the basis of his past propensities, the so called 'forbidden inference.'" *Hicks v. State,* 690 N.E.2d 215, 218 (Ind.1997) (emphasis added). "[T]he standard for assessing the admissibility of 404(b) evidence in Indiana [includes a requirement that the trial court determine whether] the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the *defendant's* propensi-

ty to commit the charged act." *Id.* at 221 (emphasis added). Indeed, all of the cases to which Mitchell cites involve the application of the rule with respect to a *defendant's* motive to commit a crime, rather than a *victim's* motive to falsely accuse a defendant of committing a crime. More importantly, our research has divulged no Indiana cases condoning such an application of the rule in a criminal prosecution. Thus, we conclude that Mitchell has failed to demonstrate that the trial court erred in excluding his evidence under Evidence Rule 404(b).[4]

■ In sum, the admissibility of evidence is within the sound discretion of the trial court. *Turner v. State,* 720 N.E.2d 440, 444 (Ind.Ct.App.1999). A trial court also has broad discretion in determining the permissible scope of cross-examination to test the credibility of a witness. *Gaston v. State,* 451 N.E.2d 360, 362 (Ind.Ct.App. 1983). Neither determination will be reversed absent an abuse of discretion. *Id.*; *Turner,* 720 N.E.2d at 444. We find no such abuse of discretion here and thus affirm the trial court's exclusion of evidence that A.G. was a party in a CHINS proceeding.[5]

## II. Restitution Order

Mitchell contends that the trial court erred when it ordered him to pay restitution for A.G.'s counseling costs as a condi-

tion of his probation. In particular, he asserts that no evidence was ever submitted with respect to the actual expenses incurred by A.G., and thus, the court's order was contrary to Indiana Code Section 35–50–5–3(a).

■ The relevant portion of this statute permits a trial court, within its discretion, to order a defendant to make restitution to the victim of a crime based upon consideration of the "medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime." Ind.Code § 35–50–5–3(a)(2); *Ault v. State,* 705 N.E.2d 1078, 1082 (Ind.Ct. App.1999). It is well settled that only actual expenses incurred by the victim before the date of sentencing may be included in restitution. *Kotsopoulos v. State,* 654 N.E.2d 44, 46 (Ind.Ct.App.1995), *trans. denied.* The amount of actual loss is a factual matter that can be determined only upon the presentation of evidence. *Smith v. State,* 471 N.E.2d 1245, 1248 (Ind.Ct. App.1984), *trans. denied.*

■ Here, the trial court rendered an essentially conditional restitution order that "if there is restitution to be made to the victim for counseling as a result of this, [it should be made] up to a $2,500 limit. And if it's more than that, [the State will] have to come back to court to show that there was more than that." This was error in the absence of any evidence support-

4. "A witness's bias, prejudice or ulterior motives are always relevant at trial in that they may discredit her or affect the weight of her testimony." *Dyson v. State,* 692 N.E.2d 1374, 1376 (Ind.Ct.App.1998) (interpreting Ind. Evidence Rule 616). However, Mitchell concedes on appeal that he did not offer the CHINS evidence for the purposes identified in Evidence Rule 616.

5. Even if we were to conclude the trial court's exclusion of evidence was error, any such error would have been harmless. *See Barber v. State,* 715 N.E.2d 848, 852 (Ind.1999). Absent A.G.'s allegedly perjured testimony, there was still evidence indicative of Mitchell's guilt. He admitted to police that A.G. did not originally want to talk to him and that she resisted a "little" when he had sex with her.

When asked about the details of his sexual encounter with A.G., he conceded to police that he had made "a wrong choice" and "a bad choice" in "[f]orcing her to have sex." He further acknowledged that when A.G. would not move out of the driver's seat to talk to him, he "nudged [himself] into the seat". He admitted that she was crying immediately before they had sex and that she was "very emotional" and "kind of distraught" throughout the incident. Brame additionally testified that when A.G. called her, she was crying on the telephone and sounded frightened. A.G. broke down in tears again when police apprehended Mitchell's van. Police also observed bruising on A.G.'s arm, skin discoloration around her neck, and what appeared to be scratch marks on her person.

ing such an order. In addition, the figure provided by the trial court was not confined to actual costs incurred prior to sentencing. Indeed, there was no evidence that A.G. had even sought counseling prior to sentencing, thereby incurring expenses subject to restitution.

Errors notwithstanding, Mitchell failed to object to the trial court's restitution order at sentencing. To the contrary, defense counsel advised that Mitchell "will make restitution and he'll pay the cost of any counseling that [A.G.] has to have, if she's in counseling." "When a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule upon it at the appropriate time, he is deemed to have waived that possible error." *Brown v. State*, 587 N.E.2d 693, 703 (Ind.Ct.App. 1992); *see also Kellett v. State*, 716 N.E.2d 975, 980 (Ind.Ct.App.1999) (holding that defendant waived error that ledger presented by the State to support restitution order contained mathematical errors and several duplicate charges, thereby rendering the amount of restitution greater than the actual expenses incurred; defendant failed to object to its admission at the sentencing hearing). Moreover, Mitchell cannot invite error and then request relief on appeal based upon that ground; invited error is not reversible error. *See Cuto v. State*, 709 N.E.2d 356, 361 (Ind.Ct.App. 1999). Accordingly, Mitchell has waived review of this claim of error.

Affirmed.

DARDEN, J., and MATTINGLY, J., concur.